UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTHONY E. SINAPI, <br>     Plaintiff, <br><br> v. <br><br> RHODE ISLAND BOARD OF <br> BAR EXAMINERS, et al. <br>     Defendants. | C. A. No. 15-311-M |

MEMORANDUM & ORDER

Plaintiff Anthony E. Sinapi obtained a temporary restraining order (TRO) that compelled defendants, the Rhode Island Board of Bar Examiners and its members (the Board), to grant him testing accommodations for the July 2015 Rhode Island bar examination, in compliance with regulations of the Americans with Disabilities Act (ADA). ECF No. 6. Mr. Sinapi now moves for attorney's fees as a "prevailing party" under that Act's fee-shifting provision, 42 U.S.C. § 12205, Federal Rule of Civil Procedure 54(d), and D.R.I. Local Rule 54.1. ECF No. 44. The Court finds that Mr. Sinapi is a prevailing party based on the TRO, and awards $19,486 in fees and $400 in costs. ECF No. 6.

I.     FACTS

Mr. Sinapi applied to take the July 2015 bar examinations in Rhode Island and Massachusetts. Mr. Sinapi applied for disability-related testing accommodations in both states in the form of 50% extra time, a distraction reduced environment, and permission to take prescribed medication during the exam.

Massachusetts initially denied Mr. Sinapi's request, but reconsidered upon receipt of additional documents. Rhode Island also denied his initial request. Mr. Sinapi then requested reconsideration from Rhode Island's Board, offering to provide the same documents that appeared to convince Massachusetts of the merits of his accommodations bid. The Board declined, even when Mr. Sinapi reduced the additional time request to 25% extra time. Mr. Sinapi then pursued the remedy prescribed by the Board by filing an Emergency Petition for Review with the Rhode Island Supreme Court, where he was again denied relief.

Determining that he had no other options in light of the looming examination date, Mr. Sinapi filed an action with this Court for injunctive relief and damages against the Board, pursuant to the ADA, 42 U.S.C. § 12101, *et seq.*, 42 U.S.C. § 1983, and the Rhode Island Constitution. ECF No. 1. In his action, he sought a TRO compelling the Board to allow him to sit for the July 2015 bar examination in Rhode Island with 25% additional time and other accommodations. ECF No. 2. The Board objected on grounds that this Court lacked jurisdiction and that the Board was entitled to absolute immunity from all claims. ECF No. 3. After a hearing, this Court granted the TRO on the ground that the Board's failure to give weight to the Massachusetts Board's decision to give Mr. Sinapi an accommodation likely violated ADA regulations. ECF No. 6. Mr. Sinapi took his exams under the terms he sought in his motion. He passed Massachusetts, but failed the Rhode Island test.[1]

---

[1] The Board granted Mr. Sinapi's request for 50% additional time for the February 2016 Rhode Island bar exam, ECF No. 44-1 at 6, which he passed.

2

In August, the Board appealed this Court's decision to grant the TRO to the First Circuit, seeking to establish that Mr. Sinapi had taken the July 2015 bar exam under disqualifying conditions because this Court lacked jurisdiction to grant the order. *See Sinapi v. R.I. Bd. of Bar Exam'rs, et al.*, No. 15-1980 (1st Cir. Oct. 13, 2015). The First Circuit dismissed the Board's appeal as moot because the order had been "irrevocably executed" after Mr. Sinapi took the exam.[2] *See id.*

Having already been granted the injunctive relief he initially sought, Mr. Sinapi then amended his complaint, adding a claim for violations of the Rhode Island Civil Rights Act. ECF No. 20. The Board moved to dismiss the complaint. ECF No. 35. Believing there was an absence of case or controversy because Mr. Sinapi received the test accommodations, this Court issued a show cause order as to why the case should not be dismissed. This Court later dismissed all of Mr. Sinapi's outstanding claims on grounds that it lacked jurisdiction to hear his claims for money damages against the Board and its members under the Eleventh Amendment, and that his claims against members individually were precluded by quasi-judicial immunity. ECF No. 43; *Sinapi v. R.I. Bd. of B. Exam'rs*, No. CV 15-

---

*February 2016 bar exam passers*, R.I. Law. Wkly. (June 16, 2016), http://rilawyersweekly.com/blog/2016/06/16/february-2016-bar-exam-passers.

[2] In response to Mr. Sinapi's motion for attorney's fees, the Board again argues that this Court lacked jurisdiction to grant the TRO, and that it should not have considered his petition on grounds of claim and issue preclusion. ECF Nos. 6, 44-1, 45. Those issues became moot when Mr. Sinapi took the July bar exam under accommodating conditions, and the terms of the Order were fully carried out. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 396, (1981); *CMM Cable Rep., Inc. v. Ocean Coast Props. Inc.*, 48 F.3d 618, 621 (1st Cir. 1995). The First Circuit's ruling on the Board's motion for expedited review confirmed that issues regarding the validity of the order were moot. ECF No. 17.

311-M, 2016 WL 1562909 (D.R.I. Apr. 15, 2016). Mr. Sinapi now moves for attorney's fees. ECF No. 44. The Board opposes the award on grounds that Mr. Sinapi is not a prevailing party under the relevant statute, and that, even if he were otherwise entitled to fees, the Board has quasi-judicial immunity from any such award. ECF No. 45. In the alternative, the Board opposes the size of the award proposed by Mr. Sinapi as unreasonably excessive in terms of time spent and rates charged by counsel. *Id.*

## II. ANALYSIS

Under the ADA's fee-shifting provision, "the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. The Court is presented with the threshold issue of whether Mr. Sinapi is a "prevailing party" based on the TRO and, if so, the Court is presented with the second issue of what fee award is reasonable. The Court must initially consider whether an award is foreclosed by immunity.

### A. IMMUNITY

The Board claims quasi-judicial immunity from attorney's fees under 42 U.S.C. § 1988, which governs fee-shifting under 42 U.S.C. § 1983. ECF No. 45 at 32. The argument is unavailing because the instant motion is governed by the ADA's fee-shifting provision, 42 U.S.C. § 12205 — an entirely different statute.

The Board is correct that before 1996, the two fee-shifting statutes were functionally identical. In *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), the

Supreme Court held that judicial immunity was not a bar to prospective injunctive relief against a judicial officer under section 1983 or to an award of attorney's fees under section 1988. *Id.* at 541-42, 44. The ADA's fee-shifting provision contained substantially similar language to section 1988, so that decision was also persuasive in interpreting the ADA. *Compare* 42 U.S.C. § 12205 ("[T]he court or its agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . .") *with* 42. U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ."); *see also Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (noting that case law under section 1988 is helpful to interpret section 12205).

In 1996, Congress amended section 1988 to include a judicial immunity clause, and it amended section 1983 to bar injunctive relief with respect to judicial officers. Pub.L. 104-317, Title III, § 309(a)-(b). However, Congress never amended the ADA to include similar protections for judicial officers. *See Hiramanek v. Clark*, No. C-13-0228 EMC, 2014 WL 107634, at *6 (N.D. Cal. Jan. 10, 2014) ("In contrast to 42 U.S.C. § 1983, there is no provision in the ADA that bars injunctive relief with respect to judicial officers."); *see also Prakel v. Indiana*, 100 F. Supp. 3d 661, 677–78 (S.D. Ind. 2015) (suggesting that attorney's fees are permitted for ADA claims against judicial officers sued in their official capacities); Mag. J.'s Order on Tel. Status Conf., 100 F. Supp. 3d 661. Accordingly, the absence of a judicial immunity

clause in section 12205 of the ADA is fatal to the Board's claim of quasi-judicial immunity from an award of attorney's fees.

B.   PREVAILING PARTY STATUS

Fee-shifting provisions in federal civil rights statutes represent Congress' considered departure from the traditional rule that attorneys pay their own way in American courts, regardless of the outcome. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Congress enacted these provisions "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *See Hensley*, 461 U.S. 424 at 429 (quoting H.R.Rep. No. 94–1558, p. 1 (1976)). Accordingly, the Court must be mindful of a civil rights statute's purpose when it determines whether a party has achieved "prevailing party" status under that statute's fee-shifting provision, and is therefore entitled to an award of fees. *See Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454-55 (1st Cir. 2009).

When it enacted the ADA, Congress created a "national mandate" for the elimination of pervasive societal discrimination that "denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses . . . ." *See* 42 U.S.C. § 12101(a)-(b). In enacting the ADA, Congress sought to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).

6

In the fee-shifting provision of the ADA and other federal civil rights statutes, Congress used the term "prevailing party" as a "legal term of art," indicating "one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). Specifically, to achieve prevailing party status, a civil rights plaintiff must first show a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989); *see Hutchinson*, 636 F.3d at 9. Second, a plaintiff must show that this change in legal relationship was "judicially sanctioned," and was accompanied by "the necessary judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 605; *see Hutchinson*, 636 F.3d at 9. It is primarily this second requirement of judicial imprimatur that the Board claims Mr. Sinapi has failed to meet with his TRO. ECF No. 45 at 11-12.

The First Circuit and the Supreme Court have not spoken as to whether the judicial imprimatur requirement can be satisfied based on the court's granting of a TRO. Enforceable judgments on the merits as well as court-ordered consent decrees necessarily satisfy this requirement, *Hutchinson*, 636 F.3d at 9, and the First Circuit has held that other court dispositions can also evince judicial imprimatur. *See id.* at 11.[3] Notably, the Third, Fifth, Ninth, Tenth, and District of Columbia

---

[3] The Supreme Court has left open the question of whether, and in what circumstances, a grant of injunctive relief that later becomes moot can satisfy the judicial imprimatur requirement. *Sole v. Wyner*, 551 U.S. 74, 86 (2007) ("We express no view on whether, in the absence of a final decision on the merits . . .

7

Circuits as well as the District of Massachusetts have all held that a preliminary injunction can satisfy the judicial imprimatur requirement. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008); *Watson v. Cty of Riverside*, 300 F.3d 1092 (9th Cir. 2002); *Kansas Judicial Watch v. Stout*, 653 F.3d 1230 (10th Cir. 2011); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005); *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306 (D. Mass. 2010).

In the First Circuit, the inquiry into whether a specific disposition satisfies the judicial imprimatur requirement "focus[es] on substance, not form," and gives the most weight to the "function of the order . . . in determining whether it may serve as the linchpin for 'prevailing party' status." *Hutchinson*, 636 F.3d at 9. Specifically, the inquiry looks to three factors: (1) a court-ordered change in legal relationship, (2) judicial approval vis-à-vis the merits of the case, and (3) judicial oversight and ability to enforce the obligations imposed on the parties. *See id.* (quoting *Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009)). When conducting this inquiry in the mootness context, the court looks to dispositions that were favorable to the plaintiff before those dispositions became moot. *See Diffenderfer*, 587 F.3d at 453.[4]

---

success in gaining a preliminary injunction may sometimes warrant an award of counsel fees.").

[4] *Accord Crowell v. Mader*, 444 U.S. 505, 506 (1980); *see also Grano v. Barry*, 783 F.2d 1104, 1108 (D.C. Cir. 1986) ("While it is obvious that a party who succeeds in obtaining a favorable final judgment following a full trial on the merits and exhaustion of all appeals is a prevailing party, it is also clear that a party may be

8

Mr. Sinapi is a prevailing party under the fee-shifting provision of the ADA because this Court granted a TRO in his favor, which compelled the Board to provide him with testing accommodations on the July 2015 bar exam. ECF No. 6. When this Court granted the TRO, it resolved the crux of Mr. Sinapi's dispute with the Board — the issue of whether he should be granted additional time on the bar exam because of his disability. *Id.* In doing so, the TRO materially altered Mr. Sinapi's legal relationship with the Board, and it vindicated Mr. Sinapi's rights under the ADA by granting him accommodations consistent with those afforded him in Massachusetts. *Id.*

The TRO also bears this Court's official sanction, and satisfies each factor of the judicial imprimatur requirement. ECF No. 6; *see Hutchinson*, 636 F.3d at 9. First, the TRO was a court-ordered, and it required the otherwise unwilling Board to grant Mr. Sinapi additional time on his exam. ECF No. 6. Second, the TRO evinced this Court's approval vis-à-vis the merits of Mr. Sinapi's ADA claim because it was grounded in this Court's assessment of his likelihood of success on the merits of that claim. *Id.* Finally, the TRO imposed upon the Board a patent and immediate obligation to comply, and this Court retained jurisdiction over the case after the TRO was granted. *Id.* Therefore, on the basis of the TRO, Mr. Sinapi is a prevailing party under the fee-shifting provision of the ADA, and the Court turns to the issue of the amount of his award.

C. AMOUNT OF ATTORNEY'S FEES AND COSTS

---

considered to have prevailed even when the legal action stops short of final appellate, or even initial, judgment due to a settlement or intervening mootness.").

Mr. Sinapi requests $31,194.50 in attorney's fees and $1,131.64 in costs.[5] ECF No. 47 at 19. Awards of attorney's fees are calculated using the "lodestar" approach.[6] *See Hutchinson*, 636 F.3d at 13 (1st Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). The lodestar is the product of "the number of hours appropriately worked times a reasonable hourly rate or rates." *Id.* (citing *Hensley*, 461 U.S. at 433). The party seeking fees bears the burden of fashioning the proposed fee award out of "suitably detailed," contemporaneous billing records that reflect its standard rates. *Id.* In response, the "putative payor" may challenge the award of fees as being unreasonably excessive in terms of time or rates or both. *See id.* The Court then "calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).

1. TIME

Mr. Sinapi's counsel requests compensation for a total of 168.7 hours spent on his case. ECF No. 47 at 18-19. The Board challenges this proposed award on grounds that it inappropriately includes two fruitless chapters of Mr. Sinapi's case:

---

[5] The Board argues that some of Mr. Sinapi's proposed costs are unreasonable because they are associated with tasks that were not relevant to his petition in this Court. ECF No. 45 at 21, 41-45. The Court's disposition of the fees issue necessarily resolves the costs issue. *See infra.*

[6] Additionally, Local Rule 54 requires an attorney seeking an award of fees to prepare an itemized "bill of costs" attesting to the fact that legal services were actually performed and that they were necessary to representation; the bill must be accompanied by a memorandum of law and an affidavit. RI LR Cv 54 (b)(1)(2).

(1) the time that he spent litigating in state court before filing a federal complaint, and (2) the time that he spent litigating ultimately unsuccessful claims after the TRO was granted. ECF No. 45.[7]

As to antecedent litigation, fees may only be awarded for work completed before the preparation of a successful civil rights complaint if that work was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached." *See Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir. 2007) (quoting *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 243 (1985)).

When appropriate, the Court may adjust the lodestar to reflect the results obtained, as determined by "the degree of a prevailing party's success." *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014); *Hensley*, 461 U.S. at 437 ("When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.").

The factor of results obtained "is particularly crucial," when the plaintiff has achieved prevailing party status despite having "succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. A court deciding attorney's fees in a case of partial success must address the extent to which the plaintiff's successful

---

[7] The Board also challenged the proposed fee award on grounds that Mr. Sinapi failed to comply with Local Rule 54, ECF No. 45 at 32-33, but he later did so. ECF No. 47.

11

claims were related to her unsuccessful claims. *See id.* at 434-5 (contrasting lawsuits that present multiple related claims from those that present "distinctly different claims for relief"). In light of "[t]he congressional intent to limit awards to prevailing parties," the court must treat claims that are both unsuccessful and unrelated to their successful counterparts within the same case "as if they had been raised in separate lawsuits, and . . . no fee may be awarded for services on the unsuccessful claim[s]." *See id.* at 435.

The time that Mr. Sinapi spent petitioning the Rhode Island Supreme Court to reconsider the Board's denial of accommodations is appropriately included in his fee award. ECF. Nos. 1, 44-1, 47. By filing that petition, Mr. Sinapi exhausted the remedial process prescribed by the Board, and built the factual and legal foundation for the successful ADA claim that he later filed in this Court. ECF No. 2. As such, the state court proceedings were a necessary precursor to Mr. Sinapi's federal complaint and motion for a TRO, which yielded the pivotal order in his favor. ECF No 6.

Nonetheless, Mr. Sinapi's lawsuit was only partially successful. This Court granted him a single form of relief — the TRO — based on the ADA claim in a motion that accompanied his original complaint. ECF No. 2. That motion, ECF No. 2, and the complaint that it accompanied, ECF. No 1, both contained additional claims for relief under the ADA, 42 U.S.C § 1983, and the Rhode Island Constitution. There is support for an award of fees for the time spent on those additional claims because they were both factually and legally related to, and

brought in conjunction with, Mr. Sinapi's one successful ADA claim. ECF No. 1 at 14-16; ECF No. 2. After this Court granted him the TRO, Mr. Sinapi continued to litigate those additional claims, and he later amended his original complaint to include a claim under the Rhode Island Civil Rights Act. ECF No. 20 at 15-17. There is no support for an award of fees for the time spent litigating any of those claims after the TRO was granted because they were all ultimately unsuccessful, ECF No. 43, and they could no longer ride the coattails of any successful claim. As such, the labor hours that directly contributed to the TRO and the instant motion[8] support an award of attorney's fees for a total of 96.9 hours,[9] and an award of $400 for a filing fee — the only cost incurred during that time. ECF Nos. 44-1, 47.

## 2. RATES

In his petition, Mr. Sinapi proposes hourly rates of $350 for Richard A. Sinapi,[10] the principal attorney at Sinapi Law Associates, $175 for Danilo A. Borgas, a first-year associate, and $90 for Michael da Cruz, an attorney who has been employed as a law clerk since 2010. ECF No. 47 at 18. Mr. Sinapi submitted

---

[8] Time spent litigating civil rights fee applications is presumptively compensable. *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340-41 (1st Cir. 2008).

[9] This award includes: (1) 29.7 hours by the principal, 20.4 of which were spent on litigation contributing to the TRO between July 22 and July 27, 2015, and 9.3 of which were spent between April 17 and April 29, 2016 on the instant motion, ECF No. 44-1 at 4, 6; (2) 35.8 hours by the associate on litigation contributing to the TRO between July 2 and July 27, 2015, *id.* at 6-7; and (3) 31.4 hours by the law clerk, 15.2 of which were spent on litigation contributing to the TRO between July 22 and July 27, 2015 and 16.2 of which were spent on the instant motion. *Id.* at 10, 12.

[10] Richard A. Sinapi, the attorney, is the father of the Plaintiff Anthony E. Sinapi.

an affidavit from a disinterested local attorney attesting to the reasonableness of these rates. ECF No. 47-2.

A plaintiff seeking an award of fees bears the burden of establishing that her proposed hourly fee structure is reasonable. *See Hutchinson*, 636 F.3d at 16. Reasonable rates are determined with reference to professional skills, experience, and qualifications, as well as the local market rate, and the nature of the work performed. *See id.* The rates that a firm ordinarily charges can operate as a helpful benchmark, as can the rates that comparably qualified and skilled local professionals charge for handling cases of similar complexity. *See id.* Recent awards of fees in the jurisdiction are also instructive in determining prevailing local rates. *See id.*

Here the Board challenges the proposed hourly rates of the principal, associate, and paralegal as being unreasonably excessive in light of their respective qualifications, amounts of experience, and degrees of skill, and as being unrepresentative of prevailing local rates. ECF No. 45. The Board also challenges the proposed hourly rates charged during the time that Mr. Sinapi's counsel spent litigating the instant motion for fees, claiming that it is excessive given the uncomplicated nature of the work. *Id.*

The hourly rates requested by Mr. Sinapi are reasonable, considering the firm's standard fee structure, the respective skills and qualifications of the attorneys, the complex nature of the work, and prevailing local rates. ECF Nos. 44-1, 47. Mr. Sinapi submitted two affidavits attesting to the reasonableness of the

rates requested by his counsel. ECF Nos. 44-2, 47-1. The first affidavit, from principal attorney Richard A. Sinapi, avers that the rates charged represent his firm's standard fee structure, and are otherwise based on the factors of skill, experience, qualifications, and prevailing local billing practices. ECF No. 44-2. It also references, *inter alia*, Mr. Sinapi's nearly thirty two years of experience, and his expertise in civil rights and disabilities litigation. *Id.* at 1-2. The second affidavit is based on the same factors; it comes from a disinterested attorney who has practiced law in Rhode Island for over forty years. ECF 47-1.

While there is a dearth of recent case law in this jurisdiction on the issue of reasonable rates in awards of attorney's fees in federal civil rights cases, awards of fees for other types of cases also suggest that Mr. Sinapi's request is reasonable. *See Bally Total Fitness of Mid-Atl., Inc. v. Iaciofano*, No. CA 11-349ML, 2013 WL 105206, at *1-2 (D.R.I. Jan. 8, 2013) (referencing Affidavit in Support of Plaintiff's Motion for Attorney's Fees at 2 and awarding hourly fees of $395 to partner, $390 and $275 to associates, and $190 to paralegals for work performed in 2012 in lease dispute case); *Genexion, Inc. v. Rhode Island Dept. of Labor and Training*, 2016 WL 3038956 at *8 (R.I.Super.) (awarding $350 hourly fee to attorney in 2016 state wage law case).

Lastly, the rates charged for time spent litigating the fee petition are reasonable in light of the above factors, and considering the complexity of the issues raised by the Board, the substantial portion of the petition that was prepared by the

law clerk, and the principal attorney's voluntary reduction of time from the relevant portion of the petition. ECF 47-1.

### III.   CONCLUSION

For the reasons above, Plaintiff Anthony E. Sinapi is a prevailing party under the fee-shifting provision of the ADA, 42 U.S.C. § 12205. This Court AWARDS the Plaintiff $19,886, including $19,486 in reasonable attorney's fees and $400 in costs.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 26, 2016